STATE of Minnesota, Petitioner, Appellant,

v.

Patrick Vincent PARADEE, Respondent.

No. C3–86–1611.

Supreme Court of Minnesota.

April 10, 1987.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Thomas J. Simmons, Renville Co. Atty., Nancy L. Logering, Asst. Renville Co. Atty., Olivia, for appellant.

Donald H. Walser, Olivia, for respondent.

AMDAHL, Chief Justice.

We granted the state's petition for review in order to decide whether the Court of Appeals erred in affirming a pretrial order of the trial court allowing defense counsel access to confidential county welfare records which defense counsel contends might contain something of use to the defense. We reverse the decisions of the Court of Appeals and of the trial court and remand to the trial court for further proceedings, including an in camera examination of the confidential records by the trial court.

Defendant is charged with criminal sexual conduct for allegedly sexually penetrating two of his nieces. Defendant has been given full access to all the medical records relating directly to this case. But he alleges generally that confidential records concerning the welfare department's investigation of an earlier incident involving one of the nieces and another man might contain something of use in his defense. Specifically, the defense seeks access to "all department records, reports, notes, files and other documents relating to contacts with the alleged victims and their family members." The state's contention is that the

trial court should examine the confidential records in camera and determine if any of the information is relevant to this case. However, the Court of Appeals, affirming the trial court, held that defense counsel himself must be given access to the records to see if any of the information is relevant to the defense. *State v. Paradee,* 398 N.W.2d 647 (Minn.App.1987). The Court of Appeals reasoned that "[o]nly the defense counsel can accurately determine which documents may be helpful in the defense of a given case." 398 N.W.2d at 650.

In reaching this decision, the Court of Appeals relied heavily on a Pennsylvania Supreme Court decision in a case similar to this one, *Commonwealth v. Ritchie,* 509 Pa. 357, 502 A.2d 148 (1985), a case which the United States Supreme Court had agreed to review but had not yet decided. After we granted review in this case, the United States Supreme Court filed its decision reversing the Pennsylvania Supreme Court's decision. *Pennsylvania v. Ritchie,* —— U.S. ——, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). The Pennsylvania Supreme Court had held that by denying the defendant access to confidential welfare records, the trial court violated both the confrontation and the compulsory process clauses of the Sixth Amendment and that the defendant's conviction of child sex abuse charges must be vacated and the case remanded to see if a new trial was needed. The Pennsylvania court held further that defense counsel was entitled to review the entire confidential welfare file himself. The United States Supreme Court reasoned (a) that under federal due process principles the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to the determination of guilt or punishment, (b) that the Pennsylvania Supreme Court erred in holding that defense counsel must be allowed to examine the confidential records in question, and (c) that both the defendant's and the state's interests in ensuring a fair trial can be protected by having the trial court review the confidential records in camera to determine if they contain favorable and material information. With respect to the last two points, the Court stated specifically:

We find that [the defendant's] interest (as well as that of the Commonwealth) in ensuring a fair trial can be protected fully by requiring that the [confidential] files be submitted only to the trial court for *in camera* review. Although this rule denies [the defendant] the benefits of an "advocate's eye," we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file * * *, he is free to request it directly from the court, and argue in favor of its materiality. Moreover, the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial.

To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information. If the [confidential] records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse. Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt, and his or her unwillingness to come forward are particularly acute when the abuser is a parent. It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality. Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected. Recognizing this, the Commonwealth—like all other States—has made a commendable effort to assure victims and witnesses that they may speak to the [welfare] counselors without fear of general disclosure. The Commonwealth's purpose would be frustrated if this confidential material had to be

disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result.
— U.S. at ——, 107 S.Ct. at 1003–04.

Our cases also mandate the in camera approach in a situation such as that presented here. Typical is *State v. Kutchara*, 350 N.W.2d 924, 926 (Minn.1984), where we stated:

> Defendant next complains about the trial court's refusal to let him examine the victim's private medical records going back 5 years to see if there was anything in them that might bear on his claim. A crime victim's *past* medical records are generally protected from disclosure by the physician-patient privilege. Minn.Stat. § 595.02(4) (1982). However, the medical privilege, like other privileges, sometimes must give way to the defendant's right to confront his accusers. *State v. Leecy*, 294 N.W.2d 280, 283 (Minn.1980); Westen, The Compulsory Process Clause, 73 Mich.L.Rev. 71, 170–73 (1974). In this case the defendant had full discovery of all the X-rays and other medical records relating to this particular incident, and the trial court viewed all the other medical records going back 5 years *in camera* to see if there was anything relevant to the case. See *Syrovatka v. State*, 278 N.W.2d 558, 562 (Minn.1979) (remanding for *in camera* examination of information to determine if defendant's right of confrontation should prevail over privilege relating to identity of informer). We believe that the trial court handled the issue correctly.

Indeed, prior decisions of the Court of Appeals are consistent with this approach: *State v. Harmening*, 376 N.W.2d 254 (Minn.App.1985), petition for review denied (Minn.1985) (relying on *Kutchara* in upholding trial court's in camera review of records), and *State v. Hopperstad*, 367 N.W.2d 546 (Minn.App.1985) (relying on *Kutchara's* in camera approach but without citing *Kutchara*).

We believe that the in camera approach of these cases is superior to the approach taken by the Court of Appeals in this case and by the Pennsylvania Supreme Court in *Ritchie*, an approach which in effect allows defense counsel easy access to various types of privileged and confidential records simply by asserting that the records might contain material relevant to the defense. The in camera approach strikes a fairer balance between the interest of the privilege holder in having his confidences kept and the interest of the criminal defendant in obtaining all relevant evidence that might help in his defense. We believe that trial courts, who by training and experience are qualified for the task of determining matters of relevancy, are capable of determining what if any of the information in the records might help in the defense. Further, we note that the determination, like any other determination by the trial court, is subject ultimately to judicial review.

We add only that it is not our intent to complicate or change the discovery process in criminal cases. Our decision is fully consistent with the broad discovery allowed by Minn.R.Crim.P. 9. Minn.R.Crim.P. 9.03, subd. 6 specifically provides:

> Upon application of any party with notice to the adverse party, the trial court upon a showing of good cause therefor may permit any showing of cause for denial or regulation of discovery, or portion of such showing, to be made in camera. A record shall be made of the proceedings. If the court enters an order granting relief following a showing in camera, the entire record of such showing shall be sealed and preserved in the records of the court, to be made available to the reviewing court in the event of an appeal, habeas corpus proceedings, or post-conviction proceedings under Minn. Stat. §§ 590.01–590.06 (1971).

In this case we simply hold that in camera examination by the trial court is mandated by the facts.

Reversed and remanded to trial court for further proceedings.