**Donald and Virginia ERICKSON, individually and as guardians of Bonnie Erickson, a minor; Brian James Erickson; and Lynn Erickson, Respondents,**

v.

**Douglas MacARTHUR; Richard Dvorak; Elton Folkerts; Terry Balfanz; Joseph Doescher; Arlen Holland; Ronald Anderson; and the City of Minnetonka, a municipal corporation, Appellants.**

No. C1–87–113.

Supreme Court of Minnesota.

Nov. 6, 1987.

Clifford M. Green, Louis P. Smith, Jon Parrington, Minneapolis, for appellants.

Joseph Nilan, Pandall D.B. Tigue, Minneapolis, for respondents.

AMDAHL, Chief Justice.

Defendants/Petitioners, individual police officers of the Cities of Minnetonka and Eden Prairie, seek review of an Order Compelling Discovery of certain eyewitness statements taken during an Internal Affairs investigation conducted by the police department of the City of Minnetonka.

The trial court ordered release without conducting an *in camera* inspection of the documents in question. We vacate the order and remand for *in camera* inspection in light of this opinion.

This action arises out of a party on August 25, 1984 at the Minnetonka home of plaintiffs, Donald and Virginia Erickson and their college-age son, Brian. A confrontation developed between local police officers and the plaintiffs.

Immediately after the episode, the Minnetonka Police Chief initiated a special Internal Affairs investigation to determine if internal discipline or other action against the police officers involved in the incident was warranted. Within a few days, party guests and neighbors who had witnessed the events that night were interviewed. Each was assured that any statements given would remain confidential.

The investigation resulted in no disciplinary action against the officers. Statements made to the investigators remain segregated in the Internal Affairs files of the Minnetonka police department. No one, other than the investigation team, has access to those files.

The City of Minnetonka did not file criminal charges against the Ericksons until October 10, 1984, nearly two months after the incident, and the Ericksons did not employ counsel until that time. As a result, their attorney had no opportunity to conduct the independent investigation normal under these circumstances while events were still fresh in the minds of witnesses. Therefore, the eyewitness statements in the Internal Affairs files are the only contemporaneous accounts of the events of that night.

When the Ericksons sought to compel discovery of the eyewitness statements, the City dismissed the criminal charges. Thereupon, the Ericksons initiated a civil suit against the individual police officers involved and the City of Minnetonka, alleg-

ing excessive force during the arrests and violation of their civil rights under Title 42 U.S.C. § 1983.[1]

Plaintiffs again requested disclosure of the eyewitness statements from the Internal Affairs investigation. The defendants objected, maintaining that the statements were not relevant, were privileged, and were confidential, pursuant to the Government Data Practices Act, Minnesota Statutes § 13.01–13.90. Thereupon, plaintiffs moved for an Order Compelling Production of Documents. Defendants responded with a Motion for a Protective Order, under Rule 26.03, Minn.R.Civ.P.

The Hennepin County District Court granted the plaintiffs' motion but issued a protective order which restricted access to the documents solely to the plaintiffs' attorney. The plaintiffs themselves were precluded from learning either the identity of the witnesses or the contents of their statements. The court did not review the documents *in camera* prior to issuing the order. The individual police officers requested interlocutory review from the Court of Appeals. The Court of Appeals denied review, finding that no privilege prevented civil discovery of Internal Affairs files in Minnesota. We disagree.

■ 1. Rule 26.02(1) of the Minnesota Rules of Civil Procedure provides for broad discovery in civil proceedings. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *." The trial court has considerable discretion in granting or denying discovery requests. *Baskerville v. Baskerville*, 246 Minn. 496, 507, 75 N.W.2d 762, 769 (1956); *Connolly v. Commissioner of Public Safety*, 373 N.W.2d 352, 354 (Minn. App.1985). Absent a clear abuse of discretion, a trial court's decision regarding discovery will not be disturbed. *Connolly*, 373 N.W.2d at 354.

---

**1.** The defendants moved for Summary Judgment, asserting that the events in the complaint could not be substantiated, did not qualify for relief in a federal civil rights action, or arose from actions the police were justified in taking as a matter of law. The trial court granted Summary Judgment to the City of Minnetonka, but denied the motions of the individual police officers.

Defendants maintain that the trial court abused its discretion by allowing civil discovery of eyewitness statements contained in the Internal Affairs files of the Minnetonka police department.

The Minnesota Court of Appeals has recently allowed discovery of police internal investigation files in criminal proceedings. *State v. Lynch,* 392 N.W.2d 700, 705–06 (Minn.App.1986); *State v. Hopperstad,* 367 N.W.2d 546, 548–49 (Minn.App.1985). The critical factor in disclosing these records is a criminal defendant's constitutional right to exculpatory information in the hands of the prosecutor. *See* Minn.R.Crim.P. 9.01, subd. 1(1)(a), (6), and (7). This element is not present in a civil case.

In this case, the trial court properly analyzed the requested data under the Minnesota Data Practices Act, which governs data collected by agencies, including local law enforcement agencies.

■ The statute is silent on the status of data collected during the course of Internal Affairs investigations. If classified as law enforcement data, the statements are public and therefore subject to disclosure under Section 13.03, subd. 1. However, these statements were taken as part of an investigation to determine whether disciplinary action was warranted against individual police officers, and therefore they probably constitute private personnel data under Section 13.43. Data collected by a political subdivision in anticipation of pending civil legal action are also classified as nonpublic under Section 13.39, subd. 2.

The trial court correctly determined that even private or nonpublic data may be released pursuant to a court order. Minn. Stat. § 13.03, subd. 4.

The two-tiered procedure to determine if a court order permitting discovery is warranted is outlined in Section 13.03, subd. 6:

The presiding officer shall first decide whether the data are discoverable or releasable pursuant to the rules of evidence and of criminal, civil, or administrative procedure appropriate to the action.

If the data are discoverable the presiding officer shall decide whether the benefit to the party seeking access to the data outweighs any harm to the confidentiality interests of the agency maintaining the data, or of any person who has provided the data or who is the subject of the data, or to the privacy interest of an individual identified in the data.

Minn.Stat. § 13.03, subd. 6.

First, the trial court must determine if the statements were discoverable at all. As the only contemporaneous accounts of the events in question, in this case the requested eyewitness statements were deemed "quite relevant." Relevant data is discoverable, unless it is protected by a privilege. Minn.R.Civ.P. 26.02(1). Thus, the key factor in the court's inquiry is the existence of a privilege.

Section 595.02, subd. 1(e) provides: "A public officer shall not be allowed to disclose communications made to the officer in official confidence when the public interest would suffer by the disclosure." We recognize that the statutory privilege broadly enunciated in Section 595.02, subd. 1(e) covers communications made to police officers, including those made during the course of Internal Affairs investigations. The scope of the privilege shall be determined on a case-by-case basis by balancing the need for disclosure against the public interest in confidentiality.

We think that the confidentiality of the witnesses who provided information to the police is a paramount concern. We therefore direct the trial court to emphasize the privacy of those citizens as a major ingredient in the balancing process.

Other courts have struggled with appropriate considerations for discovery in a Section 1983 action. The court in *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D.Pa. 1973) even attempted to compile a list of factors to be weighed in the balancing process:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental

self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.* at 344.

Courts often cite the *Frankenhauser* analysis. *See, e.g., Spell v. McDaniel,* 591 F.Supp. 1090, 1116 (E.D.N.C.1984). However, even the *Frankenhauser* court recognized the difficulty of the balancing task, noting that "the ingredients of the test will vary from case to case." 59 F.R.D. at 344.

While we acknowledge the accuracy of the *Frankenhauser* court's assessments, we think that the need for protection of the citizen who provides information to police investigators is a common thread inherent in all Internal Affairs investigations. Accordingly, the trial court should give special weight to the confidentiality interests of those citizens.

Once the competing interests are balanced under the qualified privilege of Minnesota Statutes § 595.02, subd. 1(e), the trial court must then proceed to the second tier of the analysis under the Data Practices Act. Again, a balance of the competing interests is required; thus, the line between the two steps is blurred. The trial court did stress the importance of these plaintiffs' constitutional claim and the need to determine the truth and held that the defendants' interest in the confidentiality of the internal files must give way to that need.

2. The trial court did not review the documents *in camera* prior to issuing the Order Compelling Disclosure. We hold that the trial court erred in not examining the requested material *in camera* to properly balance the competing interests at stake. We therefore remand to the trial court for inspection in accordance with the guidelines set forth in this opinion.

We have embraced the *in camera* approach in a criminal defendant's access to confidential welfare records in *State v. Paradee,* 403 N.W.2d 640, 642 (Minn.1987). We found that the *in camera* approach strikes a fair balance between the interest of the privilege holder in having confidences kept and the interests of the criminal defendant in obtaining relevant evidence. *Id.* Further, we recognized that broad discretion should be vested in the trial court:

> We believe that trial courts, who by training and experience are qualified for the task of determining matters of relevancy, are capable of determining what if any of the information in the records might help in the defense. Further, we note that the determination, like any other determination by the trial court, is subject ultimately to judicial review.

*Id.*

We now extend the policy of requiring *in camera* review of requested documents, as enunciated in *Paradee,* to Internal Affairs files requested in civil discovery. We believe that without inspection of the documents themselves, the discovery order is based on mere speculation. Further, we do not believe that the necessity for *in camera* review can be overcome with a narrowly-focused request, as in this situation.

3. The trial court allowed discovery of the eyewitness statements. However, the court also issued a protective order limiting disclosure of the eyewitness statements to the plaintiffs' attorney. Neither the identity of the witnesses nor the contents of their statements could be revealed to the plaintiffs themselves. Rule 26.03 of the Minnesota Rules of Civil Procedure gives the trial court broad discretion to fashion protective orders and to order discovery only on specified terms and conditions. *See also Baskerville,* 246 Minn. 496, 75 N.W.2d 762.

Should the trial court, after *in camera* inspection, again elect to disclose the wit-

ness statements, we urge the court to again consider ways to protect to the extent possible the privacy interests of the citizens who provided the information to the Internal Affairs investigation team. We recommend that the protective order be carefully fashioned to accomplish this objective.

Discovery order vacated and remanded for *in camera* inspection by the trial court in light of the considerations enunciated in this opinion.